Good morning, Your Honors. Chris Shuto for Petitioner Maria Ambriz-Rivera. I reserve two minutes for rebuttal. All right, and you keep track of it, so you do it. The issue in this case is straightforward. In a single affidavit from a self-interested witness not subject to cross-examination, rise to the level of clear, convincing, and unequivocal evidence. This Court already addressed this issue in Hernandez-Guadarrama v. Ashcroft, holding that this type of evidence is not clear, convincing, and unequivocal evidence. There is binding case law precedent on the issue, and the Court should follow this precedent. In the response to our Rule 28J letter, the Office of Immigration Litigation, or OIL, attempts to distinguish Petitioner's case from Hernandez-Guadarrama. We submit that the attempt is disingenuous. Counsel, since time is limited, I'm just going to tell you what I see as the two issues here. One is whether the government made a reasonable effort to have the witness present, and the other is if we take away that witness's testimony, is there enough left to uphold the result? Your Honor, I believe the answer to both questions is no. So tell us why. Yes. Addressing the letter, the only attempt was one letter supposedly sent to Rodriguez in Mexico. From the record, it's not clear if the letter was postmarked and mailed. Furthermore, the letter was sent to a vague and inaccurate address. A review of Rodriguez's statement indicates that Rodriguez gave the officers an address that is different from the one on the letter. Well, let's assume she got the letter. Is the letter adequate to make her come? No, Your Honor. One letter, I think in Hernandez-Guadarrama, the Court cites a case standing from the proposition that simply sending a letter to one witness is not a reasonable effort by the government. I think this argument is bolstered by the facts of this case, where the government exercises custodial control over the witness and then chooses to render the witness unavailable by deporting her to Mexico. Well, now in this letter, she's over a thousand miles from the border. They didn't offer to pay her expenses, and they didn't assure her that she wouldn't be arrested either. Is that correct? That's correct, Your Honor. And also, it's very unclear from the record if the letter even reached the witness. It was sent to such a vague address. She gave the officers a street number in the affidavit. The address on the letter doesn't have a street number. Do you ever practice criminal law? No, Your Honor. Well, under the criminal context, if they're unavailable under 804A5, absent from the hearing, and the proponent of the statement has been unable to prove the declarance of tenants by process or other means, and all the government has to do is make a reasonable effort, and in general, in the criminal context of the cases I saw, it just meant that the government's attorney had to walk in and say, I've tried to contact them and I can't, and I've tried to bring them and I can't, and that's about the reasonable effort that's required. And that would be in a criminal context, and we're totally outside the criminal context here. Why is it that that isn't enough here? That's exactly what the government did. Your Honor, going back to Hernandez-Guadarrama, I think there's language in that decision that specifically addresses the situation where the government exercises control over the witness, and they have an option at that point to You expected the government to keep her in jail? I guess they wanted to use her as a witness against the petitioner. They probably should have done that. They could have kept her. Is there anything in any case that I have that they should have kept her in jail for all that time in order to make her come? Well, if she'd been detained, the proceedings probably would have been rapidly accelerated. They usually are if they're detained proceedings. All right. Let's go back to the removal proceeding then. The government only must establish by clear and equivocal and convincing evidence that the facts are true in order to remove someone, correct? Yes, Your Honor. And if there is substantial evidence to support the decision by the people making that decision, then the findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary. Isn't that the standard of review? That is, Your Honor. And in this case, three witnesses, Pitts, Evans, and Martin, identified the client as aiding such an alien, using false information, saw your client meet the alien in Mexico, followed your client as she crossed the border, saw the alien meet with your client at the trolley stop in San Diego, saw them walk and talk together, saw them repeatedly look back as they were walking, then saw them split up, and in the interview then, and then in the, pardon the hearing, they then come in with this information. Now, tell me why that isn't substantial evidence. Yes, Your Honor. First, I slightly disagree that they saw my client in Mexico. I think that the first statement the officers make about actually seeing the when the one officer sticks his head out the trolley door and he's two cars away from the car that Rodriguez was on, he sticks his head out. Well, didn't they follow her from the border? They followed Rodriguez, the witness from the border. Yeah, right. And they had no contact with the Petitioner until they saw her walking away from the trolley with Rodriguez. And at that point, basically what you have is the officer's testimony that the two walked side by side for a block or two, that they were conversing, that they split up as the officers approached, and that they then arrested the two of them. And that's really all the evidence you're left with. We would submit that's not clear, convincing, and unequivocal evidence. Well, frankly, we're not the ones that are going to make that determination. The person who's determining whether they're removable is. What we're going to determine is whether there's substantial evidence in the record supporting the decision, which is a different view. I can make that decision at the point, and I might disagree with the IJ, or I might disagree with the BIA. But we're not making that determination now. We're saying is there substantial evidence that supports the decision? In other words, are the findings of fact conclusive? Would any reasonable adjudicator be compelled to conclude the contrary? So even if I don't agree, that doesn't make any difference. I'm only on the appellate court here. I didn't see what was going on. I didn't hear the witnesses. I didn't go to the hearing. I am only reading stuff. And now if there's substantial evidence to support it, then I'm done. I can't substitute my own opinion here. Your Honor, I don't believe there is substantial evidence to support that determination that the immigration judge and the agency made. If you go to Hernandez-Guadarrama and you look at the evidence in that case, I would submit that the evidence is much more substantial in that case, and the court found that it wasn't enough. Hernandez was stopped on Interstate 84, a notorious smuggling route for suspicious behavior. He had seven illegal aliens in the back of his truck. His vehicle was registered to Sunnyside, Washington, a rural community notorious for illegal aliens. Hernandez's wife gave a controversial statement of admission. Hernandez himself invoked his Fifth Amendment right from which a negative inference can be drawn. Despite all this evidence. Why do we regard negative influence in this court about that? I mean, I can understand you might argue that, but that wouldn't be something I would do. In this case, your client did testify. All she did was blanketly deny everything. She told about leaving her house. She told about crossing the border. And then she told about what she did. But frankly, her testimony differed with those of the police officers. And the I.J. said, she's incredible. We don't believe what she just said. So anything she said runs against, again, your client and the substantial evidence standard. Your Honor, I believe I'm running out of time to answer the question, or perhaps I should just reserve my 30 seconds for about all right. Did you want to ask him a question? No. Okay. I was going to ask him your questions. Yeah. May it please the Court. My name is Luis Perez, and I represent the Attorney General in this matter. Your Honors, before I get into my argument, I want to make a correction to our response to the 28-J letter on paragraph 2, first sentence between the word to and cross-examine. The word fully should appear. I'll submit an errata as to that when I get back to Washington, D.C., but just wanted to make the correction for purposes of the record. Going into the argument and in response to Judge Fletcher's question, the government contends that the letter sent in this case to notify Ms. Rodriguez was a reasonable effort for several reasons. First, if you look at the address that the letter states, it's the same address in Form 213, which this Court in Espinoza found to be a reliable source of information. This is a form that is prepared by an immigration officer in the course of his duties, and that form is entitled to a presumption of certainty. Let's assume that that was the best address. Now, tell me whether the content of that letter would induce anybody who's a thousand miles or more from the border to come. Well, the content of the letter says three things. First, it requests Ms. Rodriguez to come, it requires her to testify, and it paroles her into the United States. So she has no fear of being arrested or anything like that. She's being granted a parole. Would an ordinary person understand that paroling the men gives them not only safe passage, but that once they're in the country, they won't be detained or arrested? Well, I think that in the context of the letter in this particular case, it explains it sufficiently. Present yourself at the border, you're going to be paroled, that's going to allow you to come in and testify. So it is the government's contention that in this case, this particular letter was sufficient, reasonable. It was a sufficient, reasonable effort, not only on the Hernandez-Guadarrama, but also even from a criminal law perspective. How is she going to get remunerated or know that she'll be remunerated for coming? She's a thousand miles from the border. She presumably is not a person of any means at all. Well, I don't think the reasonableness in terms of notification and trying to bring the clarence back relates to any sort of remuneration. I think that the government of the United States can only request her to come, require her to testify, and allow her to enter the country lawfully. And I think that's reasonable under not only immigration law. Just in real life, would anybody come under those circumstances? Well, I don't know, Your Honor. But the – I mean, honestly, I don't know. I've seen other letters from the government where they've said, you know, we're going to pay the expenses. And I'm sure that's true, Your Honor. Yeah. But the whole issue here is whether the letter that was sent here was sufficient to meet the reasonable standard, not only under this Court's case law, but also even under criminal law. And our contention is that the government met that burden on the basis of what is stated in that letter. The government could have detained her in the United States. Correct. Notified counsel for the other side. Look, we need to take her deposition, then she can go back. Now, the government had put together this fancy, probably a good scheme, to try to intercept these smugglers by an elaborate scheme, putting lots of agents on the case. And then they potentially blow it by just sending the smugglee back without taking her deposition. I don't think our government has been very smart if that's what they intend to do. The government did interview her by videotape. That's right. But they didn't have defense counsel there. Well, again, this was even before the NTA was filed, before the charges were brought. This was the same day that they brought her in, that she — Sure, but they could have detained her a few days, charged her, gotten the defense counsel in. I'm just giving some advice to the government. And I appreciate it, Your Honor. That's a possibility, of course. And I've seen it done in many cases. And again, you know, I appreciate that it's a possibility. But I would propose that the question is, in this particular case, whether it was unreasonable for the government to give this lady voluntary return, which is not really a removal, but giving her the opportunity to live, which is a sort of form of relief on the same day that she was brought in. And I think that's distinguishable from an Andes Guadarrama where the person was deported. Going to Your Honor's second concern on the case, which is whether enough is left, assuming that the letter was not admissible under due process, I would propose for the same reasons that Judge Smith asked, that it is. You have three agents that testify not — that testify as to what they saw, not hearsay evidence, but what they essentially saw. And if you look at their testimony, three of the agents saw Ms. Rodriguez waiting for a trolley going southbound. She hoped in the trolley. Two of the agents saw not only Ms. Rodriguez, but also Ms. Ambriz stepping off the trolley together, walking together side by side, apparently talking to each other.  There's a clear inconsistency there. Also, you have to note that this is a planned operation to essentially detect alien smugglers, which is contrary to what happened in an Andes Guadarrama, where it was a random stop. Here you have agents who are specifically trained in identifying who is the potential smuggler, who is the potential person aiding and abetting this smuggling. And there's vast testimony from two of the agents as to how the operation works, why they believe it was significant, for example, for Ms. Rodriguez to wait 20 minutes, how these smugglers had understood the modus operandi of the — of Operation Triple Play. And I would submit that that evidence, in and of itself, is sufficient to establish removability by clear and convincing evidence. Also, Your Honor, in this case — Did one of the agents testify to following the smuggler from the border? The smuggler, yes. Agent Pitts saw her. He was in a room with a two-way mirror, and he was tasked to observe one of the lines of the people coming in. So once the inspector essentially gave him the signal that Ms. Rodriguez had a fraudulent document, he identified her, described her to the other agents. There were seven agents who knew her description. So from the border, they were able to identify Ms. Rodriguez. So they followed her, in effect? They followed her. They testified to that effect? To that effect, since the very beginning. And also, Ms. Ambriz testified that she entered the border that morning around the same time. So the testimony of Ms. Ambriz, in a way, you know, falls into place with the testimony of the agents. And again, the I.J. essentially weighed the evidence of Ms. Ambriz's testimony versus three agents' testimony and gave more weight to the testimony of the three agents based on their experience, based on the fact that they all saw more or less the same thing in terms of the operation, based on the fact that they knew what was the modus operandi of the smugglers and the smugglers and explicitly made an adversarially defined as to Ms. Ambriz. Would this evidence have been adequate in a criminal smuggling case? I wouldn't go to venture into that, Your Honor, because I don't want to exercise the function of a judge in, you know, in that sense. But I would think there is a distinction between what's necessary for deportation and what would be sufficient evidence for a crime. Sure. But again, I prefer not to go in answering that question in the sense that I don't want to adjudicate. You don't want to be brave enough, huh? I can speculate, Your Honor. But again, I try to defer that to the finer fact to a judge. And my time is up. I really appreciate the opportunity. Thank you very much. Counsel? Your Honors, if you subtract Rodriguez's statement from the equation in this case, there just isn't substantial evidence to support the clear, convincing and unequivocal standard. All you have is the testimony of Agent Evans. He says he was two trolley cars back. He pushed the button, stuck his head out the door. He saw the Petitioner and Rodriguez walking away from the trolley together. I don't think he ever testified that he saw them step down from the trolley. And that isn't necessarily contradictory to Petitioner's. I got here, as I said, when you kind of went to your seat rather than answering my question. Your client did testify. And she, in the I.J.'s opinion, lied. In fact, her testimony was found to be incredible. She was not telling the truth. And she was just there trying to do what she needed to do to try to get out of that. That has no effect here? I don't think that it's in the record that she lied. Well, they found her incredible. What does that mean? Well, the judge just can't state that someone's incredible. They have to make a credibility finding. There's that voice, and there's very strict guidance. She did find her incredible. I think we argued that it wasn't a proper credibility finding in the brief. Well, but the honest truth is that even if she just said her testimony differed from other witnesses that I believed, and therefore, I found that what she was trying to tell me wasn't the truth, she doesn't have to make an incredibility finding. And nonetheless, it's evidence that we have to weigh in determining if there's substantial evidence to sustain what they did. Your Honor, if the immigration judge is going to say that her testimony differed from the testimony of other witnesses, he has to point out how. And in this case, I don't think that it is necessarily inconsistent with the other witnesses' testimony on this. You know, there's two ways to look at the evidence in this case. Wouldn't you agree with me that the substantial evidence test is very deferential to the IJ? Yes, Your Honor. So I've got to find that just I cannot – there's no credible finder, no credible person, adjudicator, could be compelled to conclude what she concluded. They'd all go the other way. That's what you're telling me can't be found on this evidence? Yes, Your Honor. Okay, thank you. Thank you. All right, case 0476676, Ambrose Rivera v. Mukasey, is submitted. We'll now call case 0672818, Maria DeLourde Gomez Lucero v. Michael Mukasey.
judges: B. Fletcher, N.R. Smith, King